# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LIVE FACE ON WEB, LLC,** | : | |
| Plaintiff, | : | CIVIL ACTION NO. 11-2497 |
| | : | |
| v. | : | |
| | : | |
| **HIGHVIEW TRAVEL, LLC et al.,** | : | |
| Defendants. | : | |
| | : | |

## MEMORANDUM OPINION AND ORDER

**RUFE, J.**                                                                                                   **January 25, 2012**

Before the Court are Plaintiff's Motion for Default Judgment and moving Defendants' Motion to Vacate the Entry of Default.[1] Because the Court finds it does not have personal jurisdiction over Defendants, Plaintiff's Motion is denied, and Defendants' motion is granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Highview is a travel company serving travel agents. It operates a website at www.highviewtravel.com. Its website posts certain travel deals and travel information, and allows potential customers to call, fax, or fill out an on-line form to request additional information. When a request for travel information is made, the company responds by telephone. Consumers (i.e. travel agents) cannot research fares or book travel directly through the website.

On December 15, 2009, Plaintiff Live Face on Web, LLC ("Live Face") licensed a "live person" internet software and video streaming technology product to Defendant Highview Travel, LLC ("Highview") for use on the Highview website, pursuant to an end-user license agreement (the "licensing agreement"). This product was developed, trademarked, copyrighted, and owned by Live Face, a Pennsylvania-based company. After purchasing the license,

---

[1] Defendants' Motion was filed by Highview Travel, LLC and Michael Lefkowitz.

Highview allegedly disassembled and altered the software, and misappropriated content (Live Face's trademarked logo), in violation of the terms of the licensing agreement. It is alleged that Live Face learned of these violations on or about February 16, 2011. Live Face, through counsel, sent a cease-and-desist letter to Highview by certified United States mail. On February 28, 2011, Defendants' counsel, Malvina Lin, Esq., contacted Live Face's counsel and denied wrongdoing by Highview. Highview allegedly did not stop using Live Face's software until it received a take-down notice on March 4, 2011.

The Complaint, which alleges copyright infringement and trademark infringement, was filed on April 11, 2011. On May 10, 2011, Defendant Michael Lefkowitz, president of Highview, was served with the summons and complaint by "nail and mail" at his residence, pursuant to New York rules of civil practice, after two prior attempts to serve him personally at home, in the late evening and on a Saturday morning.

Defendant Highview's address of record was a private mailbox, and no additional address information could be obtained. Consequently, Plaintiff served the complaints against Highview and "Linda Tann"[2] upon the attorney for Highview, Malvina Lin, with whom Plaintiff's counsel had been communicating about the alleged violations of the licensing agreement. Highview's summons and complaint was served at Ms. Lin's office on May 18, 2011, and "Linda Tann's" summons and complaint was served there on May 24, 2011. Ms. Lin denies having the authority to accept service on behalf of Highview or Tann, although she proceeded to engage in settlement talks with Live Face after receiving the summons and complaint.

---

[2] Highview alleges that it has no employee named Linda Tann, but does have an employee named Elizabeth Tannenbaum. Ms. Tannenbaum has not been added as a defendant or served. The claims against Linda Tann will be dismissed without prejudice to Live Face's right to file claims against the correct party.

None of the defendants timely filed an answer or responsive motion, and on June 27, 2011, Plaintiff moved for default against Highview, Tann, and Lefkowitz. Default was entered by the Clerk of Court on that day.

On August 5, 2011, Plaintiff moved for Default Judgment. On November 14, Defendants filed a Motion to Vacate Default.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 55 authorizes the Court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading. It also authorizes the Court to set aside entry of default for good cause.

## III. DISCUSSION

Defendants assert three arguments in support of vacating entry of default and denying the Motion for Default Judgment: 1) Defendants are not subject to the Court's jurisdiction because service of process was deficient; 2) the Court lacks general or specific personal jurisdiction over the Defendants; and 3) the Court should vacate the default judgment for good cause shown, in accordance with Rule 55. Because this Court finds it lacks personal jurisdiction over the Defendants, it will not reach Defendants' third argument.

A. <u>Service of Process</u>

*1. Michael Lefkowitz*

As noted above, Lefkowitz was served by "nail and mail" (i.e. a copy of the summons and complaint was affixed to the front door of his residence, and a second copy was mailed to the same address in an envelope which did not identify its contents). Under New York's Civil Practice Law and Rules ("CPLR"), service may be made by "nail and mail" if diligent attempts to

3

serve an individual have failed.³ In this case, a process server made three attempts to serve Lefkowitz at his home (at approximately 10 p.m. on a Friday, 7 a.m. on a Saturday morning, and 4 p.m. on a Monday).⁴ The process server also spoke to a neighbor, who did not know Lefkowitz's place of business, but confirmed his home address and confirmed that he was not in active military service.

Defendants insist that service on Lefkowitz was improper because the Affidavit of Conspicuous Service makes no mention of any attempt to serve Lefkowitz at work. Defendant takes the position that "nail and mail" service is only proper after diligent efforts to serve a defendant at home *and* at work have failed. The Court disagrees with this reading of the statute. CPLR § 308(4) permits service by "nail and mail" when "service under paragraphs one and two cannot be made with due diligence." Paragraph one reads simply: "by delivering the summons within the state to the person to be served." Paragraph two allows the summons to be delivered to "a person of suitable age and discretion" at the place of business, dwelling place or usual place of abode of the person to be served, provided that the summons and complaint is also mailed to the person to be served at his home or actual place of business. Section 308(4), then, requires that before resorting to "nail and mail" service, one must make diligent efforts to serve a defendant personally and diligently attempt delivery to a person of suitable age and discretion at the defendant's home or place of business; it does not require attempted service at a defendant's

---

³ NY CPLR § 308(4).

⁴ Doc. No. 22, Ex. E.

4

home and place of business.[5]

The Court finds that Plaintiff used the "nail and mail" method only after diligent attempts were made to serve Lefkowitz personally and through delivery to a person of suitable age and discretion at his home, as required by §308(4). The first two attempts were not made during regular business hours. Having failed to find Lefkowitz at home late at night on a weeknight or early in the morning on the weekend, the final attempt was made in the late afternoon on a weekday. The Court finds that these three attempts satisfy the diligence requirements of the statute. Therefore, service on Lefkowitz was proper.

### 2. Highview Travel, LLC

Highview's business address of record is 199 Lee Avenue, Suite 686, Brooklyn, New York, 11211. This address is provided on its website,[6] and is registered with the New York State Division of Corporations.[7] Service of process was attempted at that address on May 2, 2011, at 3:48 p.m.[8] However, the process server discovered that this address is merely a private mailbox

---

[5] See Sartor v. Utica Taxi Center, Inc., 260 F. Supp. 2d 670, 674-76 (S.D.N.Y. 2003) (collecting and summarizing state court cases interpreting § 308(4); noting that while some courts "have imposed the additional due diligence standard demanding evidence of an effort to serve defendant at his actual place of business,"other courts have not found that § 308(4) requires this step; and ruling that such a requirement could not be found on the face of the statute and should not be implied in light of the appellate division's ruling that no rigid standard governed an analysis of whether due diligence had been exercised) (citing Barnes v. City of New York, 51 N.Y. 2d 906, 907 (N.Y. Ct. of App. 1980) ("no rigid rule could properly be prescribed.")); Kopec v. GMG Const. Corp., 09-cv-2187, 2011 WL 2650597, at *2 (E.D.N.Y. July 6, 2011) ("Factors used by courts to determine whether due diligence has been satisfied include: whether attempts at a defendant's residence were made at times when it could reasonably be expected that the defendant would be at home and not at work or in transit, whether the attempts were made a varying times on different days, whether at least one of the attempts was made on a weekend, and whether the process server made inquiries as to the defendant's whereabouts." (internal citations omitted)).

[6] Doc. No. 22, Ex. B.

[7] Doc. No. 22, Ex. A.

[8] Doc. No. 22, Ex. C.

and Defendants could not be served there.[9]  Highview has no staff or office space at 199 Lee Avenue, and does not carry out any business there.

Unable to serve Highview at its address of record, Plaintiff served Highview's summons and complaint to an employee at the law offices of Malvina Lin, Esq.[10]  Defendants had retained Ms. Lin to represent them in discussions with Plaintiff's counsel regarding the alleged licensing agreement violations which form the basis of this lawsuit.  Defendants argue that outside counsel can only accept service for its corporate clients when specifically authorized to do so, that Ms. Lin was not so authorized, and that Plaintiff's counsel had been informed that Ms. Lin was not authorized to accept service for Highview.  But Defendants do not point to any authorized agent who should have been served in lieu of Ms. Lin, nor to any legitimate address at which Highview could have been served.  Service could have been made by delivering a copy of the summons and complaint personally to Lefkowitz, as Highview's president,[11] but, as noted above, it had proved impracticable to deliver a copy of the summons and complaint to Lefkowitz personally.

When service on a limited liability company is impracticable, the plaintiff should file a motion with the court so that the court can provide direction on how to effectuate alternate service.[12]  Live Face failed to file such a motion.  However, it is clear to this Court that Highview has acted to evade service by using a private mailbox as its business address and withholding authorization for counsel to accept service on the company's behalf.  More importantly,

---

[9] Id.

[10] Doc. No. 22, Ex. F.

[11] NY CPLR §311-a.

[12] NY CPLR § 311-a(b).

6

Highview has misrepresented to the Court, in its Motion to Vacate Default, the feasibility of service at Highview's address of record. For example, Defendants write "Moreover, Plaintiff identified the business address in paragraph 4 of the Complaint, so cannot now claim that he lacked sufficient information to determine it."[13] The address identified at paragraph 4 is the 199 Lee Avenue address which was nothing more than a mailbox. Defendants also wrote: "Highview's sole business address is 199 Lee Avenue, Brooklyn, New York."[14] Attached to the motion was an affidavit, in which Highview's president swore that "[Highview's] principal and only place of business is located in Brooklyn, New York at 199 Lee Ave., Suite 686, Brooklyn, NY 11211."[15] Highview was well aware that there were no employees available to accept service at 199 Lee Avenue, yet made these misrepresentations to the Court in support of their argument that service was defective.

Given this apparent bad faith, and finding that Defendants did receive actual and timely notice of the lawsuit, by service on Highview's president, Lefkowitz, at his residence, the Court finds that Highview has waived its right to object to the defect in service of process. The Court therefore finds that service on Highview was proper, given the unique facts of this case.

---

[13] Motion to Vacate at 3.

[14] Motion to Vacate at 4.

[15] Aff. of Michael Lefkowitz at ¶ 2. The affidavit of employee Elizabeth Tannenbaum also states that Highview is located at 199 Lee Ave., Suite 686, Brooklyn, NY. See ¶ 1. On December 8, 2011, after Defendants' counsel received a letter from Plaintiff's counsel indicating that he intended to file a claim against Defendants' counsel with the Disciplinary Board of the Supreme Court of Pennsylvania, Defendants submitted "corrected" affidavits to the Court, in which Lefkowitz and Tannenbaum admitted that the Lee Street address was a private mailbox, and that the "actual operations of Highview occur at 791 Kent Avenue, Brooklyn, New York, 11205." See Doc. No. 21. To the Court's knowledge, this was the first notice Plaintiff received regarding Highview's actual place of business.

B. Personal Jurisdiction

Once a defendant raises a jurisdictional challenge, the plaintiff has the burden of proving that jurisdiction is proper by affidavits or other competent evidence.[16] Plaintiff need only establish a prima facie case of personal jurisdiction,[17] and meets this burden by stating the bases for personal jurisdiction with reasonable particularity.[18] "Factual disputes created by the affidavits, documents and depositions submitted for the court's consideration are resolved in favor of the non-moving party."[19] Federal courts sitting in diversity may exercise personal jurisdiction over nonresident defendants to the extent provided by the law of the state in which the federal court sits.[20] Federal courts in Pennsylvania may assert jurisdiction over a defendant to the extent that the defendant would be subject to jurisdiction in Pennsylvania state courts.[21] Pennsylvania's long-arm statute permits the exercise of jurisdiction over non-resident defendants to the full extent permitted under the Due Process Clause of the United States Constitution.[22]

*1. General Jurisdiction*

To establish general jurisdiction, which is based on contacts with the state that are unrelated to the cause of action, due process requires the plaintiff to demonstrate that the non-

---

[16] Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 330 (3d Cir. 2009).

[17] Id.

[18] See Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992).

[19] Elbeco Inc. v. Estrella de Plato, Corp., 989 F. Supp. 669, 672 (E.D. Pa. 1997) (citing Friedman v. Israel Labour Party, 957 F. Supp. 701, 706 (E.D. Pa. 1997)).

[20] Fed. R. Civ. P. 4(e).

[21] See Fed. R. Civ. P. 4(k)(1)(A); Pennzoil Prods. Co. v. Colelli & Assoc., Inc., 149 F.3d 197, 200 (3d Cir. 1998).

[22] Pennzoil Prods. Co., 149 F.3d at 200 (citing 42 Pa. Stat. Ann. § 5322).

8

resident defendant had continuous and systematic contacts with the forum.[23]

Michael Lefkowitz alleges that he lives and works in New York and has no significant contacts with Pennsylvania. He did not consent to jurisdiction, and was not present in Pennsylvania at the time of service. Live Face does not allege that Lefkowitz has any ongoing contacts with Pennsylvania. Therefore, under 42 Pa. Cons. St. Ann. 5301(a)(1), the Court does not have general jurisdiction over Lefkowitz.

Highview, a New York limited liability corporation with its principal place of business in New York, maintains a website which posts certain travel information and allows consumers to call, fax, or submit an on-line form to request additional information. When a request for travel information is made, the company responds by telephone, presumably from New York. Customers cannot place orders through the website. Because the website is available nationally, citizens of Pennsylvania may use the website.

Internet activity within a forum *may* subject an entity to general personal jurisdiction in that forum. The district courts within the Third Circuit generally apply a sliding scale approach to determine whether personal jurisdiction exists over a company with an internet presence in a given forum. Where the defendant enters into contracts with residents of the forum that involve the knowing and repeated transmission of computer files over the internet, a court within that forum will have general jurisdiction.[24] However, where a defendant simply posts information or advertisements on a website accessible to users in a forum, the courts of that forum generally will

---

[23] Id.

[24] Blackburn v. Walker Oriental Rug Galleries, Inc., 999 F. Supp. 636, 638 (E.D. Pa. 1998).

not assume jurisdiction.²⁵

The contacts in this case fall somewhere between those two extremes: the Highview website primarily serves as an advertisement for the company's services, but it also allows users to exchange information with Highview via the internet. Therefore, the Court must look at the nature and quality of commercial activity that Highview conducts over the internet, and especially activity directed at Pennsylvania.²⁶ Plaintiff has not alleged that Highview's website created continuous commercial contacts with Pennsylvania, and there is no evidence in this case to suggest that Highview targeted or selectively directed promotional activities at Pennsylvania.²⁷ Accordingly, the Court cannot find that Highview, through its website, had systematic and continuous contacts with Pennsylvania which were central to its business.

The Court finds Highview's website does not establish general personal jurisdiction on the record before the Court.

### 2. Specific Jurisdiction

Specific jurisdiction exists when a claim arises from or relates to contacts purposefully directed at the forum state.²⁸ The Court may preside over a case "if it is satisfied that the relationship among the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework first announced in International Shoe Co. v. Washington, and later refined

---

²⁵ Id. at 638-39.

²⁶ Molnlycke Health Care AB v. Dumex Medical Surgical Products, Ltd., 64 F. Supp. 2d 448, 451 (E.D. Pa. 1999) (holding that operating website which allows citizens of all states to order products and to request additional information does not subject a corporation to the general jurisdiction of every state); Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997).

²⁷ Gehling v. St. George's School of Medicine, Ltd., 773 F.2d 539, 542 (3d Cir. 1985).

²⁸ Marten v. Godwin, 499 F.3d 290, 296 (3d Cir. 2007).

10

by the abundant progeny of that landmark case."[29] To establish specific jurisdiction, a plaintiff must show that: (1) the defendant purposefully directed activities at the forum; (2) the litigation arose out of or related to one or more of these activities; and (3) jurisdiction of the court comports with fair play and substantial justice.[30]

Plaintiff has not alleged that Lefkowitz had any contacts with Pennsylvania, but does allege that Highview entered into a contract with Live Face, a Pennsylvania company. Accordingly, the Court will examine specific jurisdiction as to Highview only.

The Court must first determine whether Highview "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[31] Here, Highview entered into a licensing agreement for the use of a software product owned by Live Face. It is well established that merely entering into a contract with a resident of a forum is not sufficient to establish personal jurisdiction over the defendant.[32] When analyzing minimum contacts in a contract case, courts consider the totality of the circumstances, including which party initiated the business relationship, the location and character of the contract negotiations, the terms of the contract, the contemplated future consequences, and the parties' actual course of dealing.[33]

Given modern commercial business arrangements, physical presence in the forum by a

---

[29] Mellon Bank, 960 F. 2d at 1221 (citation omitted).

[30] D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd., 566 F.3d 94, 102-03 (3d Cir. 2009).

[31] Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co., 326 U.S. 310, 319 (1945)).

[32] Mellon Bank, 960 F.2d at 1223.

[33] Remick v. Manfredy, 238 F.3d 248, 256 (3d Cir. 2001); Mellon Bank, 960 F.2d at 1223.

nonresident defendant is no longer required to establish minimum contacts.[34] Mail and wire communications sent by a nonresident defendant into the forum can constitute the purposeful contacts required to establish personal jurisdiction.[35] However, despite the fact that physical entrance is not required, courts in the Third Circuit have generally emphasized a defendant's visits to or physical presence in the forum when finding specific personal jurisdiction.[36]

Here, Highview purchased a software license from Live Face through Live Face's website. In order to purchase the license, Highview was required to read and accept the terms and conditions of a non-negotiated licensing agreement posted on the Live Face website. Once it had agreed to the terms of the licensing agreement, the product was conveyed to Highview digitally over the internet. The licensing agreement does not contain a forum selection clause, and although it does include a Pennsylvania choice-of-law provision,[37] Plaintiff does not allege that Highview knew or should have known that it was dealing with a company located in Pennsylvania.[38] In addition, the unlicensed altering of Live Face's software took place in New York. Therefore, the only contact with this forum was the internet transmission of Highview's

---

[34] See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

[35] Telcordia Tech Inc. v. Telkom S.A. Ltd., 458 F.3d 172, 177 (3d Cir. 2006); see also Grand Entm't Grp v. Star Media Sales, Inc., 988 F.2d 476, 482 (3d Cir. 1993) (holding that the court had personal jurisdiction over a breach-of-contract case in which the defendants had not physically entered the forum, but had sent at least twelve telexes into the forum and initiated twenty telephone calls with the plaintiffs in the forum regarding contract negotiations); Schiller–Pfeiffer, Inc. v. Country Home Prods., No. 04–1444, 2004 WL 2755585, at *6 (E.D. Pa. Dec. 1, 2004) (concluding that "substantial . . . email communications" with a corporation located in the forum may qualify as sufficient evidence of minimum contacts for the exercise of personal jurisdiction).

[36] See, e.g., Leone v. Cataldo, 574 F. Supp. 2d 471, 479 (E.D. Pa. 2008); Mesalic v. Fiberfloat Corp., 897 F.2d 696, 701 (3d Cir. 1990); Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 147-48 (3d Cir. 1992).

[37] See Time Share Vacation Club v. Atl. Resorts, Ltd., 735 F.2d 61, 65 (3d Cir. 1984) ("Pennsylvania choice of law provision, although perhaps a factor in showing whether the defendants could foresee that their acts would have effects in Pennsylvania, would not itself be enough to vest jurisdiction.").

[38] Mellon Bank, 960 F.2d at 1223.

assent to the non-negotiated licensing agreement, and Highview's payment for the software license. The Court finds no evidence that Highview knew that it was entering into that agreement with a company based in Pennsylvania, or that it purposefully directed activities at this forum.

Defendants could not reasonably expect to be haled into court in Pennsylvania based on their interactions with Live Face. Therefore, neither Lefkowitz nor Highview is subject to the jurisdiction of this Court.

## IV. CONCLUSION

Because the Court lacks personal jurisdiction over the Defendants, the entry of default will be vacated and the motion for default judgment will be denied. Pursuant to 28 U.S.C. § 1406(a), the Court may "in the interest of justice," transfer the action against the Defendants to a district where the action originally could have been brought.[39] As defendants are amenable to personal jurisdiction in the Eastern District of New York,[40] the Court will order a transfer of this matter to that court.

An appropriate order follows.

---

[39] Goldlawr, Inc. v. Heiman, 369 U.S. 463 (1962).

[40] In their Motion to Vacate Entry of Default, the Defendants admit that Lefkowitz lives at 85 Lorimer Street, Brooklyn, New York. In their amended affidavits, Defendants attest that Highview's actual business operations occur at 791 Kent Avenue, Brooklyn, New York. As Brooklyn, New York lies within the Eastern District of New York, that court has personal jurisdiction over the Defendants.